Feigenbaum. Glad you said it was I. I was going to do Feigenbaum. Thank you. Good stuff. Whenever you're ready. Council. May it please the Court, my name is Matthew Thompson. I'm from the law firm of Barry Shredner, Katz, and Benson. I'm here on behalf of the appellant, the County of Ocean. I may reserve three minutes for rebuttal if necessary. I would note that I'm splitting my time with Kate May counsel. In fact, there's some issues that are separate, so he may have additional rebuttal on his own behalf. This appeal arises out of the Attorney General's Directive, also known as the Immigration Trust Directive, which prevents county law enforcement agencies from providing federal immigration information or assistance to federal immigration authorities. I would note that in the lower court, the court dismissed the matter and refused to seek supplemental jurisdiction over the state law claims in which we allege whether or not the Attorney General had authority over the county and the county department of correction. But we still have a state law claim pending. And that is still pending. Okay, so we won't worry about that. But you say that 2B2 of the directive is preempted, correct? That is correct. All right. When we look at Murphy, the court recognized two requirements, and correct me where you disagree. The court recognized two requirements for federal preemption. First, federal law must represent the exercise of a power conferred on Congress by the Constitution, pretty basic. But I want you to focus on the second requirement, and I'm quoting here, the Constitution confers upon Congress the power to regulate individuals, not states. Doesn't that doom your claim? We don't believe that that's a different type of issue there. That is more where they can't regulate as far as like talking about Murphy with gambling. What we believe is that that does not doom our case, that as a county, we would certainly have certain rights through the supremacy clause to go through that. But if, I mean, you're right, it involved gambling, but it involved what the state of New Jersey was trying to do, right? The state of New Jersey wanted to institute sports wagering. And in that opinion, the Supreme Court said that it has to be individuals, not states. And you are not individuals, right? You're arms of the state. Ocean County is an arm of the state. Cape May County is an arm of the state, right? That would be correct, yes. But we think under these certain set of facts that, yes, we aren't, you know, they are, it is preempted and that can't control. Do you have any authority to countermand what I just read? There's some case where the Supreme Court found preemption when it was a state actor, a government actor, not an individual? Not at my hand, but I will certainly make sure I have it. I mean, the only case I know of is Reno v. Condon, but that wasn't regulating states in their sovereign capacity. That was regulating states as market participants is one reading of Reno. And so I don't think there is part of your case that says that these statutes are regulating states as market participants. It's regulating them in their police powers, which are incident attendant to their sovereignty. Well, like Reno, that was an instance where they were providing information to the government and that they couldn't provide it. The court had upheld that they could. Here the county seeks to, you know, not necessarily assist, but provide information to or available to public information for the most part, except for two things, social security number and driver's license. Those are generally not given to the public, but these are information that whether it was the FBI coming for the same information, the state would have no problem as providing the same information to the FBI, the IRS, the marshal service. They're not saying that this information can't be provided to federal government authority. They're just limiting it to this one specific instance of the immigration regulatory. Well, which shows that they're not being candid when they say this, they have no problem enforcing federal immigration policy. That seems pretty transparent, but this is an intramural fight, right? This is a classic intramural fight. The state is a subdivision. It's all within New Jersey. The United States is involved right now. I mean, you're trying to cooperate with the United States and apparently, and they, they've decided not to participate right now in this stage of the appeal or anything beyond a statement of interest below. So to the extent that the entity that you're trying to cooperate with hasn't shown up, you're kind of left with that intramural fight. Well, part of the issue is the information that's provided, except for the social security number or driver's license, that's available on demand to the public. So an immigration officer could come to the jail and request all of that information except for the social security number, if they were a member of the public and get it. And they could do it. Judge Fitz's question, I mean, isn't this, isn't this issue sort of moot? Because I mean, I don't know. I haven't been, I don't have my fingers on the pulse of federal immigration policy by any stretch. We're busy deciding cases, but I'm wondering whether this is a vestige of a policy that is not continuing or perhaps won't be continuing at the federal level. Do you, can you enlighten us on that? Well, as far as I know, the immigration would still come to us and seek that information. The statute is still on the books. The federal statute, the INA is still on the federal books. It has not been repealed. So the county certainly would be willing to cooperate and allow federal immigration agents to, you know, I mean, I'm asking, have they been? Following up on Judge Fitz's question, I mean, is this Since, since this order has come into place, we've ceased that. Prior to this order, if they were allowed to come in and under the statute, we're required to have a book. But over the years, the statute is originally from 1700. So it's now computerized. So we've given them access to a computer to get the booking information and the intake. You said the public can still come in. So have, have they been coming in as quote members of the public? We've received OPA requests, not necessarily from immigration, but from various individuals throughout the year that would seek, I would like the intake information for various. So is it your position that the directive would make this available if a federal officer came in to the, to a prison and said, I'd like this information in my capacity as a federal officer? Is it your position that the directive would bar the transmission of that information? But if the same officer came in and said, you know what, I'm off duty right now, I just would like to know, then as a member of the public, that could be done. And there is some degree of almost discrimination against the federal government when it asks, does that have any place in your claim? If I may, I'm right here. Well, there's a couple of issues there. One, it's not just any federal agent. It's if it was a federal agent of any other branch of the branch of the federal government, they would be permitted to have whatever access that, that we would provide prior to that. This only applies to the immigration officer when they come in. And the information that would not be permitted to them is stuff that's not available to the public. Stuff that is, that would not be available to the general public would be the social security number and the driver's license. When we looked at the text here, the INA, the immigration, federal immigration law, makes clear that states may not restrict the sharing of information regarding citizenship and immigration status. That's a quote. And the directive from the state of New Jersey to its subdivisions, including the counties here, has a carve out that allows state officers to send, maintain, receive information regarding citizenship or immigration status of an individual. So they're carving this out. You're now saying, in effect, that the words regarding immigration status and citizenship are broader than what you have. What we're saying is... What is normally understood, and it includes all these other things that you would like to give, but you're now saying that the state of New Jersey is precluding. We've always argued that it's broader. And it's particularly broader for both the social security number and the driver's license, which is really the two key important issues here. Because it's the social security number that can corroborate, or the driver's license information that could corroborate whether the person is here legally or illegally. And that is what the INS would use to further investigate. But you're asking us to somehow believe that information regarding immigration status means social security and driver's license numbers. Right. Well, if you look at the way the directive is written, and it only applies to immigration officers, a social security number to a FBI agent or to other police department is permitted. The only exception is when it comes to immigration and immigration officers. So they would need that to confirm citizenship or immigration status. But where is... So only by that broad interpretation can there possibly be preemption, right? Correct. And so how... What makes your argument strong that we should read these words regarding immigration status and citizenship broadly? I think if you look at the directive itself and how it's applied, it's only applied to immigration authorities. Immigration authorities, we can only provide... That's not my question. I mean, okay, it is my question in part. But how does it apply to license numbers? And social security status, for example? Well, social security status, you can look it up and it can tell you whether or not that is one, an improper or invalid social security number. Two, it can also give, according to the INS, the status, whether they're a documented immigrant, whether they're not documented, their green card status. The driver's license, the state of New Jersey has two types of driver's license. One that's called an undocumented driver's license and a regular driver's license. That clearly would assist in determining the status of whether it's an immigration status question or a citizen's status question. All right. Why don't we hear from Mr. Lindsey and then we'll get you back. Good morning, Your Honors. Jeffrey Lindsey on behalf of Cape May County Sheriff Bob Nolan and the County of Cape May. If I can jump in and answer, I guess I'll start with the broader interpretation in the Attorney General's. And I think if the court looks at the ordinary generally accepted use of regarding, it's to broaden the noun that precedes. So looking at it from, I guess, a syntactic view, it's generally used to broaden the noun that precedes. Both the state and the district court acknowledge this fact, but disregard it here. When you consider that ordinary generally accepted definition of the term and you combine it with the legislative history of the INA, the county's conclusion is unavoidable. It is broader than just immigration status itself. And I think that's supported by the legislative history. If you look at the Senate conference report on 1373, quote, requires a cooperative effort between all levels of government. The acquisition, maintenance, and exchange of immigration related information, not just immigration status. Immigration related information by state and local agencies is consistent with, and it goes on. Similarly, the House conference report added, these statutes were enacted for federal immigration officials to receive information regarding the presence, whereabouts, and activities of illegal aliens. So both the House and the Senate said that it was broader than just immigration status. If you look at- I mean, at one level, it strikes me that to the extent that your argument here on the floor, but the answer that you then have to answer is, well, when does it stop? That goes into my- Because there's probably 30 different types. I'm just ballparking it, 30 different types of visas. You get a U visa, a T visa, all these types of visas exist. And each one of them have different requirements. There's different, there's public charge. There's all these things that come into play in the federal immigration space. And so once it gets broader, is there any real limiting principle other than to say we look at the aggregate of all the information that would ever be used in any immigration form or proceeding ever? And only if it doesn't fall in that, would it not be regarding immigration or citizenship status? It gets really big really fast, I guess, is what I'm saying. It does, and that goes to my next point. The Eastern District Court of Pennsylvania aptly found, quote, the phrase citizenship or immigration status plainly means an individual's category of presence in the United States, end quote. It continued, quote, the phrase information regarding includes only information relevant to that inquiry. So that would be the answer to your question, information relevant to that inquiry. It means information that's relevant to the inquiry about an individual's immigration status. Certainly that means more than immigration status itself. I guess my point is there's so many different type visas. And so certain visas require, you know, there's trafficking visas that may exist for human trafficking victims. There's violence against women visas that might. Do you get to ask all of that, all of those questions of any person just because that could be relevant in some way to corroborate the type of visa that a person has? I understand your point, Your Honor, and that is somewhat of a slippery slope. However, based upon the legislative history and just the ordinary general meaning of that term, it's larger than immigration status itself. It certainly should include personal identifying information, which every law enforcement officer from throughout the country on a daily basis uses personal identifying information to properly identify someone. The fact that federal immigration authorities can't have access to that same information, can't exchange and communicate with local officials about that information, does not allow them to properly identify an immigrant. Yeah, that's because the state doesn't want that to happen. So that is obstructing, correct, that's obstructing federal law. No, the federal agents can do whatever they want. They're just getting zero cooperation or limited cooperation from the state of New Jersey. Correct, they're getting limited. But they can't be required to cooperate because under Murphy, that's clear that that would be commandeering, right? I think the present case is distinguishable from Murphy for a few reasons. First, as counsel put, the regulations were far different. Here, it's in a field that's heavily entrenched with federal authority as immigration. Second, the statutes fall within the reporting requirement noted in Prince in California, and to hold that reporting requirements or information sharing violate the 10th Amendment would enable states to cripple federal programs. Third, these states do not regulate state sovereignty to regulate their own citizens. Let me just jump in there. I mean, the federal government has a lot of ways to work with states. There's this notion called cooperative federalism. This case may be about uncooperative federalism, but one of the ways that federalism works is there's the spending clause. And that if what you can't cram down on states through the 10th Amendment, what the federal government can't cram down on states through the 10th Amendment, you know, the stick might not work, but there might be a carrot, and it might be the spending clause. And so to say that the way that our Constitution allocates these powers or certain limitations, at least Murphy makes very clear, on what the federal government can do by way of stick, this metaphor, to state governments, but that takes nothing away from the carrot. And so isn't this case really about just the stick and not the carrot? And it says really nothing about the endgame. It just says that a stick can't be used in this way. Sorry, that's pretty convoluted in the metaphor, but... I apologize, Your Honor, you lost me. Yeah, okay. Well, I guess the point is, before you say that this is a total breakdown, you have to recognize that the federal government has other powers, like the spending power. And so if they want to induce cooperation by New Jersey, and I've already noted their absence in this case, so maybe they don't, they have spending power that they could use by way of incentive. Correct, Your Honor, and I think what you're getting to is, and I don't recall the case, because it's not really an issue here, but was it the Byrne grant in Chicago? Was it Sessions? The Sessions case, I believe, where that is exactly what the previous administration tried to do, is to withhold grant funding in order to comply with their immigration agenda. And I believe the, I don't recall what court, but the decision in Sessions went against the administration for doing just exactly that. What's your response to my pre-option question that I posed to Mr. Thompson? So I believe what you're saying is, or what you were going to, is the district court, where it noted that that was a death knell to our case. Yeah, I'll quote the, you want me to quote the language again? It's right out of Murphy. I think the question, if I recall, is this does not regulate private actors. It regulates the government. So that is... Correct. Murphy said that pre-option must regulate individuals, and here we've got government actors, not individuals. How do you get out of that? I have two responses to that. First is 1373B, which reads, notwithstanding any other provision of federal, state, or local law, no person or agency may prohibit in any way or restrict the federal, state, local government, any, and so on. And it specifically uses that word person, where if you look in section A, it uses the word government official. So same 1373, A uses government official, B uses person. I think you have to conclude from that that they're talking about different people. One is a government official acting on behalf of a state government or one of its subdivisions. The other is a person, which I would conclude is a private actor. But both talk about... The problem is that Murphy, the statute issue in Murphy had a similar distinction between states and persons, and the Supreme Court said, basically, we don't care. Let's run them both out. And that led to the separate opinions on severability. Let me see if I understand. You're trying, in addition to immigration status and citizenship, you're saying that you would like to fit in within that things like driver's license information and social security number. Is that correct? Person identifying information. Correct, Your Honor. Okay. Now, my understanding is that Mexico tends to require tuberculosis vaccinations for children, and the United States doesn't. Could vaccination status be considered information regarding citizenship or immigration status? No. Because? No, I think... Were you asking me because? Is that a question? Because question mark? I think, going back to the way the Eastern District Court of Pennsylvania did it, it has to be information that's relevant to the citizenship or status. So, in this context, with federal immigration enforcement, it has to be in a way that they can properly identify the individuals they're dealing with. Vaccination status wouldn't apply to that. But by prohibiting person identifying information, you're obstructing federal law. You're obstructing the INS, the ability to perform their job. That presupposes that the Department of Homeland Security can't do their jobs without enlisting the aid of state and local governments, right? I think that's... Yes, I agree. I think that's with most federal programs. It does require some cooperation and assistance from the states. That sounds a lot like PRINCE, right? Right. It goes along with the reporting requirement information sharing. It's PRINCE and a number of cases after that, that reference that reporting exception. All right. Thank you very much. Thank you, Your Honor. I apologize. I didn't at the beginning reserve time. Did you want... I notified the clerk that I requested to reserve three minutes. That's fine. Thank you. May it please the court. Jeremy Feigenbaum for the state. When a law enforcement officer receives a request from ICE, that officer has a choice. Honor the request or decline it. That's because, as everyone agrees, the INA does not command individual officers to aid federal civil immigration officials, even to provide them with information. But they can if they want to. Compliance is voluntary. And they want to. That's exactly right. It's about letting them. That's exactly right. Because you're in charge of them. That's exactly right. Because under state law... They have to answer to you. Essentially. I mean, they have a state law claim in state court that they don't have to answer to us, but as we all agree, that's not properly before this court. And I think that... Is that a standing issue or a merits issue? So... Are they you? Is this a real intramural fight in the sense that they are just an extension of you or... Yes. So, especially when you think about law enforcement, their police power is our police power. And so their discretion is our discretion. When they're given discretion to do something, they're doing it as state actors. They're representing the state. We've structured ourselves, obviously, to have counties and to have cities and other forms of department and government. But just as when the state police acts, it's using New Jersey law enforcement power, it's the exact same thing as when you think about county law enforcement acting vis-a-vis the federal government and vis-a-vis the federal constitution. So we do think that that's both a standing and threshold issue, and we think it bleeds into why the merits... The Second, the Fifth, and the Tenth Circuits have adopted rules of standing that would presumably allow counties to sue states, in this case New Jersey, at least in cases involving the supremacy clause. That's right, although I would note two things about that. The first is that the Tenth Circuit actually just went on bonk to consider political subdivision standing and heard argument two weeks ago. So I'd maybe put a pin in the Tenth Circuit for a second. And then the Fifth Circuit, in a case called Donnellan v. Louisiana in 2008, had a panel opinion saying, we're bound by our own panel precedent, but we're not sure Rogers got it right. And again, the Fifth Circuit's precedent there is only based on its power to persuade. So I do think it's notable that subsequent panels of that circuit have questioned the decision. You can flip that around, but the Ninth Circuit's the only one that supports your position, and I, is there, isn't there some internal concern on the Ninth Circuit on that issue? Yes, there very much is. There's certainly been concurring opinions and dissenting opinions on that. I think what I would note is that this court is faced essentially with a choice. Everyone agrees there are certain federal constitutional provisions that a political subdivision cannot bring against its creator state. The Contracts Clause, the Just Compensation Clause, the Fourteenth Amendment. So the choice between this court is not, can cities sue in exactly the same way as an individual or a private corporation could bring a lawsuit against a state? The question is, are we going to draw a line that says each panel needs to pick and choose based on the particular constitutional provision whether they can bring a lawsuit, or does it make sense to have a categorical rule that says we as a federal circuit for federal constitutional claims are not going to superintend over these kinds of intramural disputes? And essentially, as SIRSA makes clear, that's the most recent opinion from the Supreme Court, that it makes sense to have a categorical rule. It doesn't make sense to try to draw this line between individual constitutional provisions and collective constitutional provisions, which is what some of the other circuits did that Your Honor was referencing. We don't think that line holds up because there's no reason to think that political subdivisions have any rights under collective provisions any more than they would under individual provisions. Their contracts are our contracts. Their property is our property. It's why they can't bring a contracts clause claim. It's why they can't bring a just compensation claim. But their police power, their discretion vis-a-vis the federal constitution is ours as well. So when it comes to the pick-and-choose approach or when it comes to the categorical approach from a SIRSA, it just doesn't make sense to think of the federal constitution itself as giving counties rights that they can use to bring against the state. All right. Assuming we don't get there. Go ahead. Yeah, let me just tease that out in the establishment clause context. What if a state said, you know what, we want to go about creating each county and we're going to assign each county a religion? Could the counties sue or would we just have to say, nope, that's not an issue for counties to sue, that it can only be brought by individuals against the state? So I think it would be brought by individuals, including potentially office holders who are affected in a personal way by that kind of decision. But it's no different than if we said, for example, the Attorney General's office must have a particular religion. The Attorney General in his personal capacity might have a lawsuit about that kind of law, but it wouldn't be the Attorney General's office itself as an office that you would think of as being injured by the state's decision. And that's the basic point here, that relative to the federal constitution and based on what the court said most recently in a CIRSA, it's the Department of Jersey City. It's the Department of Trenton vis-a-vis the federal constitution. So if we'd easily understand that our Department of Environmental Protection doesn't have an establishment clause claim against the state, then we also understand that the county itself wouldn't. Again, individuals might, including individual office holders affected in their personal capacity. So there's going to be no problem challenging that kind of rule, but it won't be by the counties. All right. What about preemption? So I think the important premise when we talk about preemption is that it is common ground in this case, and every court to consider it, that at the level of the individual officer, compliance with these informational requests is voluntary. So we know that in part because the INA itself imposes no duties on individual officers to respond to these sorts of requests. We know this from 8 CFR 287.7, which makes clear that these are voluntary requests to respond to, and we know that from circuit precedent. Both Philadelphia v. Attorney General and Galarza make clear that these informational requests are voluntary. Ocean County's complaint itself at pages 17 to 19 of the supplemental appendix confirm that information sharing is voluntary. So the question in this case essentially is, does the state's decision to decline at the level of the chief law enforcement officer, of our attorney general, become unlawful even if individual officers within his chain of command would be able to simply decline that request? And that's why we don't think preemption makes any sense here. You would need, I think, the INA to be extraordinarily clear to work the kind of preemption that the counties suggest have happened in this case. In first case, the Supreme Court most recently in Virginia-Uranium made clear that when we need to find real evidence in the structure, it can't simply be a comparison of purpose between the purpose of federal law and the purpose of state law, and it can't simply be a resort to legislative history for the broader points. This is a question of statutory interpretation like any other. And because it's a question of statutory interpretation, if you look at the various provisions of the INA, if you set 1373 aside for one second and you look at the sections like 1226 and 1231, outside of 1373, every single order in the INA is actually directed to federal officers, not state and local officers. And because of that, it's quite clear that whatever Congress may have... It just means it doesn't preempt the field, right? It doesn't mean there couldn't be conflict preemption. But we know there isn't conflict preemption here in the sort of square conflict sense because, again, at the level of the individual officer, everyone agrees responding is voluntary. And I think this maybe gets back to my thematic point, which is that if an individual officer has discretion, then all the way up their chain of command, they need to be able to regulate that discretion. And if the INA is going to create a barrier in between the chief law enforcement officer and an individual law enforcement officer, you're going to need real clarity to do that, given the strangeness of thinking of preemption in this sort of way, interposing the federal government in between the state and in between individual officers representing the state and using state power. Well, I mean, that reflects a certain perspective, right? I mean, the question is, who's really doing the interposing? The federal government would like to have a relationship with the state and then with individual counties. And one perspective on the directive could be it's the directive that's interfering with the federal government's relationship, not the federal government interfering with the state and the county's relationship. I'm not saying that's right. I'm just saying that's a question of perspective. But I guess let me just ask this bigger question on preemption. My understanding of preemption is that the starting point for preemption is whether or not there's a valid exercise of a specific enumerated how. And in your briefs, you say we've got problems as a rule of construction with the anti-commandeering doctrine in the 10th Amendment. But why is that just limited to a rule of construction? Why not just say 1373 and 1644 regulate states directly? Therefore, they're unconstitutional. Therefore, there can be no preemption. It seems strange to first pass through preemption, which has as its prerequisite a valid exercise of a constitutional power, and then use the 10th Amendment as kind of a rule of construction on the back end. Doesn't the analysis start with the exercise of a valid constitutional power? And if something violates the 10th Amendment, it's not an exercise of a valid constitutional power. I think this court can definitely start in either direction. I think we win. It won't surprise you to learn under either way of approaching. The reason we talk about it in this way, preemption and then the Constitution, is simply because this court's often talked about constitutional avoidance. And so we gave this court a way to avoid the constitutional question in the first instance. But I absolutely agree that if you think of this case as whether or not you have normal appropriate preemption provision, or if you have one that's structured directly in the way that Murphy forbids, I think that's a perfectly fair frame for the case. And I think New Jersey clearly prevails under that frame. You have both a formal 10th Amendment problem, and I think a sort of functional or substantive set of consequences that come from it. The formal 10th Amendment problem is the one this panel's been identifying this morning that comes from Murphy. Which is to say that Murphy makes clear that you can have regulations by the federal government on the general population and on private individuals, and they can preempt contrary state rules. But what you can't have are orders from the federal government to the states. And that's orders to the states to do something, or orders to the states to refrain from doing something. And whether you're looking at 1373 itself, or you're taking the obstacle framework, everyone agrees that this is an order directly to a state about what we have to refrain from doing. We have to refrain from telling our officers how to use the discretion, the voluntary choices that they're given about responding to informational requests. And because of that, you do have the direct formal Murphy problem. So if we agree with you on preemption, is there any need to address anti-commandeering at all? I don't think so. I think if you agree with us on anti-commandeering, you wouldn't have to get into preemption. And if you agree with us on preemption? It's two sides of the same coin, but if we pick either side, the other side's unnecessary. That is saying it better than I am. That's exactly right. Either gets us there. But I'm curious about your preemption answer. Your answer to my preemption question was very interesting to me. Because if I heard you correctly, you were making a substance argument citing Virginia uranium rather than sort of the threshold, more formalist argument that this just can't apply here because we're dealing with government actors and not individuals. Is there a reason for that? No, we think it's both. We think, not to again go back to my point that there's multiple ways for New Jersey to win, but there are multiple ways for New Jersey to win. I think if you look at the fact that this is a law specifically about how the state deals with itself, then that's where the Nixon case comes in. And Nixon has passage after passage that I believe uses the phrase uncertain adventure for the idea that Congress would ever try to use a law that regulates itself. But that's obviously what 1373 is and that's obviously what any argument about obstacle preemption would be. Once you accept that at the level of the individual officer, there's the ability to turn down, to decline one of these informational requests, then the only kind of theoretical preemption we're talking about is whether or not the INA says that decision has to be made at the level of the officer. It can't be made at the level of their chief. And that's what Nixon says is so dangerous. You are putting the federal government in between our chief law enforcement officer and the individual officer. And to respond to Judge Phipps' question for a moment about whether or not you're just taking a matter of perspective, I think two perspectives, two points help us that our perspective is the right one. The first is that the federal government doesn't have a relationship with our officers. Now in individual cases they may work together, but the officers are representing the state. They're using state power. They're not acting as private individuals who happen to live under U.S. sovereignty. They are working as state employees through the counties, through the departments we've set up, as Asursa explains, for their interactions. So when we want to regulate ourselves and figure out how we're going to respond to these informational requests or not, the presumption against preemption means that the correct framing and the correct perspective is specifically one in which we control our own internal law enforcement functions. So that's why it's the federal government trying to interpose their role into our chain of command between chief law enforcement officer and individual officer. And the INA is clearly silent on that subject outside of 1373 because outside of 1373 there is absolutely nothing in the statute that speaks directly to that kind of situation. And instead, when it speaks about state power and control, in example 8 U.S.C. 1357, it specifically acknowledges compliance with state and local laws when you're thinking about, say, 287G agreements. So when they address the role that states have, Congress recognizes that the authority that states bring to the table. But that doesn't in any way demean, to Judge Phipps's question, the idea that if you read the INA differently, we would, of course, still have an anti-commandeering problem. And it would be a very similar problem to why we think there isn't obstacle preemption. They are two sides of a similar coin. The problem in that case would be that Nixon and Asursa make clear that it is substantively important to states how we distribute our own power. You couldn't have a federal law that essentially says the state is free to share certain kinds of information. But if your Department of Environmental Protection wants to share it and your Department of Business or Commerce doesn't want to share it, the Department of Environmental Protection must win. Because we would all immediately understand that it's not the federal government's place to superintend intramural fights like that, even if the state is free to do information sharing. So no one would look at a statute like that and say, yes, it was proper for Congress to pick the Department of Environmental Protection in New Jersey over the Department of Business and Insurance in New Jersey. But that's essentially what they say is happening here, that Congress stepped in and picked either local governments or individual officers to have authority over the state's Attorney General and state chief law enforcement officer, the individual that the state decided would be the Attorney General. So the Suspending Clause is kind of an interesting unspoken part to federalism. It's not really in this case. But the federal government can choose which municipalities it chooses to fund and which it doesn't. It can funnel block grants directly to municipalities that don't go to states. And with the understanding that the municipality will use that block grant and it won't just become part of the state's offers, there might be educational funding under the Elementary and Secondary Education Act that can be used as other mini-state entities. Is it your position that actually, nope, the state of New Jersey could just take all that money, bundle it up and use it however it wants because Congress can't have a relationship with each subdivision? No. But that's also true, just to be clear, even if they work with one of our individual departments, like the Department of Environmental Protection. The point there is Congress is free to attach all manner of requirements that speak to whether or not we can do certain things, structure ourselves in a certain way and the like, tied to money. And the through line of the anti-commandeering cases is that the spending clause would be a solution to achieve all of the things that Congress would want to achieve. So it may be that the state on the front end could limit when municipalities are allowed to apply for grants without state approval, but they couldn't on the back end if they've given that approval, then said, well, the federal government isn't allowed to attach that to a funding restriction. That takes it out of the sort of Tenth Amendment fire and brings it into what Your Honor earlier referred to as the carrot system. I do think that this is a case about a stick. The only thing we're talking about in this case is a stick. And there are carrots. When my friend on the other side referred to the failure of the burn JAG program to attach this kind of money to immigration restriction compliance, that was because the arguments in that case were the executive branch was attaching that money but hadn't it been approved by Congress to do so. There were no arguments in those cases that if Congress affirmatively made the choice to attach money to compliance with a different understanding of 1373 or to attach compliance with transfers of individuals from criminal custody over to civil immigration custody, that there would be any sort of constitutional problem with that. So Congress has all manner of tools at its disposal to solve these problems. The tool it doesn't have at its disposal is a direct command to the states about how they're going to cooperate or coordinate with the federal government. And it certainly doesn't have the ability to either imply that or to do it through really cramped language in 1373 read incredibly broadly. So not only would it be an impermissible direct order to the states, the particular mechanism appellants say they chose here, but at the same time and in the same vein, it certainly shouldn't be one that we read into the INA by implication or through broad readings of the text that Congress itself never chose. Any further questions? Thank you very much. Thank you. Mr. Thompson. Just a few quick points, if you may. Go ahead. One of the themes of counsel's argument is that we're all under the chain of command. As stated previously, that's at issue here, particularly with corrections officers. He stated that they're considered state actors. Certainly being considered a state actor has other issues. I don't know of one case in which the state has stepped in and represented corrections officers related to actions that they took in performance of their official duties. If they were state actors at that time, they'd be entitled to coverage for liability purposes. So to expand that is certainly something that hasn't really been thought out. With regard to Murphy, there's a couple of key distinctions there. Murphy involved action of the legislature. Here, we don't have action of the legislature. We have action of the attorney general. Not providing a regulation which is adopted through the normal course through the administrative procedure. That sounds like your state law claim. Well, that's part of the state law claim. But in Murphy, it is a distinction because Murphy revolved the state of New Jersey repealing the prohibition against whether or not the state could do that. This is more of an image. But Prince was also an anti-commandeering case, and that involved federal background checks not done by the legislature. But here, again, this also involved an action by someone who, as part of our state law claim, is not within our chain of command. Our chain of command is the Board of Freeholders, which are five individuals which are named in this. They're not individually named, but as a whole, they are named. The sheriff for Cape May County, as counsel has stated, could certainly bring a claim. He's an individual. He has brought a claim. So we think that even the individual sense certainly should have been met. How do you handle the big picture challenge for Mr. Feigenbaum that,  Congress's Commerce Clause power and the Supremacy Clause, but states retain some power, right? But the theme of this case from New Jersey is, well, whatever power states retain, that analogy doesn't continue when you compare the power of the state of New Jersey and the power of Ocean County and Cape May County and the sheriff. What's your response to that? Well, we say it's not unfettered. There are limitations, and this is one of those limitations. But what case support, what law do you have to support the notion that your county and the other county, any county in New Jersey, retain some sort of sovereignty, if you will, in the same way that states retain some sort of sovereignty vis-a-vis the federal government? Do you have any case support for that? Well, I think some of that's related to the state law claim. We're talking about an action of the state. All right. So you're just reemphasizing where I'm showing my cards. That's where the real action in this case is going to be, is in the state court. Correct. I'm over my time. Keep going. I think the issue there is when you look at what actions they can take, this is a directive. This is not a regulation by the Attorney General. So this is not an action of the legislature. It's not an action of the governor. This is an action of a cabinet member. And that is, I think, where's the key distinction there is, you know, you're mixing whether the state. Whether he had the power to do that. Right. Or be litigated in the state court. Yeah. That is litigated. Once again, that sounds like a state issue. Yeah. So, but if that's decided one way, then yes, he doesn't, the state doesn't have the, that's a limitation on the state power. So, unfortunately, that answer is not done yet. The briefing is still being done and should be received next week from the state. But once that's done, that'll solve that answer right there. All right. Thank you. Mr. Lindsey, you wanted three minutes, I believe. Just briefly, Your Honor, I wanted to address councils arguing about standing and the state's failure to file a cross appeal for closes its ability to alter the judgment before this court. The cross appeal rule requires the filing of a cross petition when the respondent seeks to alter the judgment below. Here, the state did that. They seek to have this court reverse the district court's finding when they failed to file a cross appeal. That should preclude that argument before this court. To the other point where counsel conceded that an individual, even a public office holder, would have a claim, as Mr. Thompson pointed out, Sheriff Bob Nolan is a party to this, so he would have a claim, even under counsel's acknowledgment. With that, I think really the issue before this court is whether New Jersey is permitted to obstruct enforcement of federal law. Law that remains intact, law that remains the law of the land. We're a nation governed by laws, and those laws include the immigration statutes and the regulations promulgated there under. But what you're asking us for is, in effect, a statutory interpretation of the word regarding. Correct, Your Honor. Okay. Thank you. Thank you very much. Thank you to all counsel for being with us today, and we'll take the matter under advisement. Erica will take a 10-minute recess in order to set up things for the next argument.